Todd A. Seaver (SBN 271067)
Matthew D. Pearson (SBN 235339)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: tseaver@bermantabacco.com
          mpearson@bermantabacco.com

*Attorneys for Plaintiffs*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW PERRIN and BRIAN BAYERL, individually and on behalf of all others similarly situated, | No. |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiffs,* | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| SANDISK LLC; WESTERN DIGITAL CORPORATION; WESTERN DIGITAL TECHNOLOGIES, INC., | |
| *Defendants.* | |

Plaintiffs Matthew Perrin ("Plaintiff Perrin") and Brian Bayerl ("Plaintiff Bayerl") (collectively "Plaintiffs"), hereby allege the following against SanDisk LLC ("SanDisk"), Western Digital Corporation ("WD Corp" or "Western Digital Corp"), Western Digital Technologies, Inc. ("WD Tech" or "Western Digital Tech" and collectively with "WD Corp", "Western Digital" or "Defendants") on behalf of themselves and all others similarly situated. Plaintiffs' complaint is based on personal knowledge, information and belief, the investigation of counsel, and public sources.

//

//

//

1

## NATURE OF ACTION

2      1.      Plaintiffs bring this action against Defendants on behalf of a class of persons

3  (defined below) who purchased SanDisk Extreme Solid-State Drives, SanDisk Extreme PRO

4  Solid-State Drives, and WD My Passport Solid-State Drives (the "SanDisk SSDs").

5      2.      The SanDisk SSDs are manufactured and sold to offer high-speed data transfer

6  and storage. Storage capacity, speed, and durability are major selling points for the SanDisk

7  SSDs as they are designed for, among others, photographers, videographers, and other creative

8  professionals who work with large files, need to access them quickly, and work outside an office

9  environment.

10      3.      Beginning in early 2023 users of the SanDisk SSDs began complaining in online

11  forums—including forums on SanDisk's own website[1]—that the SanDisk SSDs are suddenly,

12  and without warning, wiping data and, in some cases, becoming unreadable. In other words, the

13  SSDs suddenly become worthless.

14      4.      After months of inaction, Defendant Western Digital finally admitted in May of

15  2023 that the SanDisk SSDs had a firmware problem and released a firmware update that

16  purported to resolve issues on *some* of the SanDisk SSDs that are regularly failing customers. At

17  the time, Western Digital announced that they "addressed this firmware issue in the

18  manufacturing process, and we can confirm that the issue is not impacting currently shipping

19  products."

20      5.      However, Western Digital's purported fix has not resolved anything and

21  consumers continue to have their products fail, causing them to lose the valuable data they stored

22  on the SanDisk SSDs, and defeating the purpose of owning a SanDisk SSD in the first place.

23      6.      These issues have had a material impact on the value of the SanDisk SSDs that

24  Plaintiffs purchased. Given the unreliability, Plaintiffs and class members can no longer

25  realistically use the SanDisk SSDs for fear of losing all of their data.

26

27

28
---
[1] SanDisk Forums, *Extreme Portable SSD*, https://forums.sandisk.com/c/portable-ssd/extreme-portable-ssd/235 (last visited Aug. 16. 2023).

CLASS ACTION COMPLAINT                                                         2

7.     In fact, Defendants have now significantly discounted the SanDisk SSDs they sell on Amazon, likely to reflect diminished market value for a flawed and defective product.

8.     Plaintiffs and Class members, therefore, were injured when they purchased defective SanDisk SSDs, and again as the SanDisk SSDs that they own have declined in value and reliability.

9.     Given Western Digital's long-term knowledge of the SanDisk SSDs' defects and their continued efforts to suppress that information from being disclosed to the public, Plaintiffs believe that additional information supporting their claims will be uncovered following a reasonable opportunity for discovery in this action.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members defined below, and minimal diversity exists because majority of putative class members are citizens of a state different from Defendants.

11.     This Court has specific personal jurisdiction over Defendants SanDisk, WD Corp, and WD Tech because they purposefully direct their conduct toward California, transact business in this District and in California, engage in conduct that has had and continues to have a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including those in this District and in California, and purposely availed themselves of the laws of California. Additionally, this Court has general personal jurisdiction over Defendant SanDisk, Defendant WD Corp, and Defendant WD Tech because they are headquartered in and have their principal places of business in California.

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). The amount in controversy for the Class and Subclass exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members are citizens of a different state than Defendants. Venue is proper in this District pursuant to

28 U.S.C. §1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, each Defendant maintains its principal place of business in this District.

## INTRADISTRICT ASSIGNMENT

13. Pursuant to Northern District of California Civil Local Rules 3-2(c) and 3-5(b), assignment to the San Jose Division of this district is proper because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Santa Clara County, California, and Defendants' principal place of business is located in Santa Clara County, California.

## PARTIES

14. Plaintiff Matthew Perrin is a natural person domiciled in the State of Florida. Between 2022 and 2023, Plaintiff Perrin purchased at least eight SanDisk Extreme SSDs from Amazon.com, including Extreme 2TB, Extreme 4TB, and Extreme PRO 4TB. Despite being touted as fast, rugged and dependable, Plaintiff Perrin has experienced these drives arbitrarily ejecting themselves, not being seen as a valid hard drive when plugged back into a computer, and would often display a message that "this drive is not readable." As a result of the defects present in the SanDisk SSDs, Plaintiff Perrin lost all data stored on several SanDisk SSDs.

15. Plaintiff Brian Bayerl is a natural person domiciled in the State of Florida. In 2023, Plaintiff Baryl purchased at least two SanDisk Extreme SSDs from Amazon.com, including SanDisk Extreme 4TB. Despite being touted as fast, rugged and dependable, Plaintiff Bayerl has experienced the failure of two drives within minutes of each other and is now reluctant to use SanDisk Extreme products. Due to the nature of his work and the data on the devices, Plaintiff Bayerl spent nearly $8,000 on only partially successful efforts to retrieve the data from the failed drives through various data recovery third parties. These efforts also determined that the issue was caused by faulty internal firmware on the drives.

16. Defendant SanDisk LLC is a business incorporated under the laws of the state of Delaware with its principal place of business at 951 SanDisk Drive, Milpitas, CA.

17.     Defendant Western Digital Corporation is a business incorporated under the laws of the state of Delaware with its principal place of business at 5601 Great Oaks Parkway, San Jose, CA. Western Digital Corporation is the parent company of a conglomerate of corporate entities, including Defendants SanDisk LLC and Western Digital Technologies, Inc.

18.     Defendant Western Digital Technologies, Inc. is a business incorporated under the laws of the state of Delaware with its principal place of business at 5601 Great Oaks Parkway, San Jose, CA. Western Digital Technologies, Inc. is the seller of record and licensee in the Americas of SanDisk products.

## I.     THE SANDISK EXTREME AND EXTREME PRO SSDs

19.     Defendants Western Digital Corp, Western Digital Tech, and SanDisk launched the SanDisk Extreme and Extreme PRO SSDs in 2018 at the Consumer Electronics Show (CES) in Las Vegas, Nevada. From the start, Defendants made clear that the SanDisk Extreme SSDs were developed for, among others, photographers and videographers who "require durable and high-performance media capture solutions," and described the "the new, superfast SanDisk Extreme® Portable SSD" as "perfect for saving and editing hi-res photos and videos on-the-go."

20.     Defendants also advertised the reliability and durability of the Extreme and Extreme PRO SSDs, pointing out that the drives had an IP55 rating (meaning it could withstand water and dust), and releasing videos showing photographers out in the wilderness using the Extreme and/or Extreme PRO SSDs,[2] among other things.

21.      The SanDisk Extreme and Extreme PRO SSDs represented a significant technological shift over the traditional digital data storage options of Hard Disk Drives (HDDs), thumb drives, and memory cards. For example, HDDs have always been plagued by reliability problems due to their mechanical nature and vulnerability to physical shocks in environments that required mobility. In contrast, the Extreme and Extreme PRO SSDs, leveraging flash storage technology, eliminated moving parts entirely. This not only enhanced durability but also enabled faster data access and writing speeds, far outpacing HDDs.

---

[2] SanDisk, *SanDisk Extreme Portable SSD | Official Product Overview*, Youtube, https://www.youtube.com/watch?v=on0B70waoM8 (accessed Aug. 11, 2023).

22.     Compared to thumb drives and memory cards, which also use flash storage, the Extreme and Extreme PRO SSDs offer a more robust storage solution in terms of capacity. While thumb drives and memory cards are designed for portability and might suffice for casual storage needs, they often fall short when it comes to storing larger files or managing high-quality content demands, such as those of professional photographers and videographers. The SanDisk SSDs not only provided substantially greater storage capacity but were also purpose-built to handle the rigors of professional content creation.

23.     In 2020, Defendants unveiled an "enhanced" line of Extreme and Extreme Pro SSDs dubbed version 2, offering "nearly 2x the speed over previous generations."[3] In its official press release, Defendants noted that the SanDisk Extreme and SanDisk Extreme PRO portable SSDs "are purpose-built to keep up with today's high-quality content demands. Professional photographers, videographers and enthusiasts capture and keep life's best moments every day *and they need reliable solutions that perform on the move at astonishing speeds*" (emphasis added).

## II.     THE SANDISK EXTREME AND EXTREME PRO SSD'S SOLD BY DEFENDANTS ARE DEFECTIVE

24.     In early 2023, SanDisk SSD purchasers began reporting abrupt SanDisk SSD failures resulting in the permanent loss of their data.

25.     For example, a video production professional posted the following description of SanDisk SSD failures on Reddit:

> Multiple DITs/Loaders/ACs on both coasthave [sic] experienced the exact same failure with these drives over the last month. The symptom seems to be that after a sustained write they will completely lose their filesystem and it's a total crap shoot wether [sic] you can recover it or not. The primary way you will see this is that the drive will unmount and you will not be able to get it to mount again, despite showing up in Disk Utility. You can sometimes recover it using DiskDrill's filesystem rebuild, but occasionally that does nothing. It persists with any filesystem type.

---

[3] Press Release, *Western Digital, Western Digital Unveils Unmatched Combination of Speed and Portability With Its Enhanced Line of SanDisk Extreme Portable SSDs* (Sept. 30, 2020) https://www.westerndigital.com/company/newsroom/press-releases/2020/2020-09-30-western-digital-unveils-enhanced-line-of-sandisk-extreme-portable-ssds  (accessed Aug. 15, 2023).

***A few of us are working with a colleague at SanDisk to try and get this
addressed***, but in the meantime we're collecting data to prove to SanDisk that it
actually is more than a fluke . . . If you've experienced this, we would really
appreciate it if you would log it at this form with as much of the information that
you have. We promise we aren't selling your info, only sending the failures direct
to SanDisk so they can hopefully track down the root of the issue.
https://notionforms.io/forms/drivetracker/[4] (emphasis added)

26.     Similarly, another SanDisk SSD purchasers reported the following:

I bought [a SanDisk Extreme Pro External 4TB SSD] on Thursday from B&H.
Arrived Friday and I formatted it to I believe macos extended journaled, then
loaded it up with a bunch of essentially irreplaceable photos without much
thought. This morning I uploaded a bunch of them to my Cryptomater iCloud
vault to show a friend. I come back a few hours later and I can't view the files on
this drive and I eject it, plug it back in and it won't mount, but I can see it in disk
utility and it knows it's 4TB.[5]

///

///

---

[4] Ian __, *Western Digital Unveils Unmatched Combination of Speed and Portability With Its
Enhanced Line of SanDisk Extreme Portable SSDs*,
https://www.reddit.com/r/editors/comments/10syawa/a_warning_about_sandisk_extreme_pro_ssds/ (last visited
Aug. 16, 2023).

[5] Outlookable, *Sandisk Extreme Pro External 4TB SSD failing to mount to MacOS*,
https://www.reddit.com/r/datarecovery/comments/106s7n3/sandisk_extreme_pro_external_4tb_ssd_failing_to/ (last
visited Aug. 16, 2023).

CLASS ACTION COMPLAINT                                                                              7



27. And another user claiming to be a videography professional reported the following experience:

> Take my advice and stay away. Yesterday was the second time my 4TB Extreme Portable SSD v2 crapped out on me -- greyed out in Disk Utility and unmountable. I tried different USB-C cables, switched out the directions, rebooted my computer (MBP'21 M1max), everything I could. Sandisk customer support is a joke.
>
> And this was also the **second time** this drive corrupted. Formatting it fixed it the first time but that's not an option anymore because how am I supposed to rely on an SSD for video editing if it corrupts itself randomly? (and yes, I safely ejected it every time even though you don't technically have to do that if the drive is plugged in but idle). Thankfully I had my files backed up in 2 other places so my work isn't lost, but I'm out about $400 now. Currently trying to return it to B&H.[6]

28.     Despite the slew of complaints and the apparent willingness of some victims to try and work with SanDisk to resolve the issue, Defendants refused to acknowledge the widespread issue for months and mostly referred purchasers of SanDisk SSDs who experienced drive failures to open a support ticket with SanDisk's technical support team.

29.     This only changed in May 2023, when multiple media outlets picked up the story and contacted Defendants for comment in advance of publication.

30.     The stories from media outlets like *The Verge* and *ARS Technica* covering the SanDisk SSD issues noted the commonality of complaints and even featured personal experiences of the media outlets' own employees or their friends. For example, *The Verge* author Sean Hollister noted that "Over two months ago, my friend and Verge supervising producer Vjeran Pavic told me he'd lost an entire 4TB SanDisk Extreme Pro worth of video clips. Completely gone with no trace"[7] and the *Ars Technica* story included the following experience of an *Ars Technica* employee:

> Ars Technica's Lee Hutchinson confirmed suffering not one, but two 2TB Extreme Pros dying. After filling about halfway, each drive met a slew of read and write errors. When he disconnected and reconnected the SSD, it showed it was unformatted with the drive completely wiped, including its file system. Wiping and reformatting didn't help, and this happened with two different units.
>
> Lee's story is echoed by many people, including those on SanDisk's forums, who bought one of the external SSDs within the past few months. The problem seems

---

[6] steed_jacob, (Rant) Sandisk Extreme Portable SSDs are HORRIBLE, https://www.reddit.com/r/videography/comments/1191jw0/rant_sandisk_extreme_portable_ssds_are_horrible/ (last visited Aug. 16, 2023).

[7] Sean Hollister, *Buyer beware: some SanDisk Extreme SSDs are wiping people's data*, The Verge, (May 22, 2023), https://www.theverge.com/2023/5/22/23733267/sandisk-extreme-pro-failure-ssd-firmware.

to only affect a recent batch of drives, with one user claiming they were told via a Japanese distributor that "this problem is causing a fuss and is only for those manufactured after November 2022" (Ars couldn't confirm this). The Reddit user ian__, who claimed to be collecting error reports to share with SanDisk, agreed that the issue only affects recent batches. And some users said they used several Extreme and Extreme Pros over the years but only saw ones purchased recently fail.[8]

31.    Defendants only responded after authors from multiple news outlets contacted them in advance of publishing stories highlighting the issue. At that point, Western Digital gave its first admission that the SanDisk SSDs were defective, but claimed to have developed a fix, telling a reporter:

> Western Digital is aware of reports indicating some customers have experienced an issue with 4TB SanDisk Extreme and/or Extreme Pro portable SSDs (SDSSDE61-4T00 and SDSSDE81-4T00 respectively). We have resolved the issue and will publish a firmware update to our website soon. Customers with questions or who are experiencing issues should contact our Customer Support team for assistance.

## III.    DEFENDANTS' DELAYED RESPONSE AND FIRMWARE UPDATE HAS NOT FIXED THE ISSUE.

32.    On May 22, 2023, Western Digital admitted that all SanDisk SSDs had a defect that could cause users to unexpectedly and permanently lose their data, stating that Western Digital had "identified a firmware issue that can cause SanDisk Extreme Portable SSD V2, SanDisk Extreme Pro Portable SSD V2, and WD My Passport SSD products to unexpectedly disconnect from a computer" and that Western Digital had "developed a firmware updater tool that allows the needed firmware to be installed, enabling your continued use of the SSD on your Windows and/or macOS device." Defendants then proceeded to confidently state that they "had addressed this firmware issue in the manufacturing process, and we can confirm that the issue is not impacting currently shipping products."

//

//

---

[8] Scharon Harding, *SanDisk Extreme SSDs keep abruptly failing—firmware fix for only some promised*, Ars Technica (May 19, 2023), https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised/.

33.     But unfortunately for Plaintiffs and Class members, this is untrue. The firmware update has not fixed the defective SanDisk SSDs, and the defective SanDisk SSDs are still failing post-firmware update, resulting in permanent data loss.

34.     On August 7, 2023, *The Verge* reporter Sean Hollister (author of the original Verge article covering the SanDisk SSDs defect), reported that purchasers and users of defective SanDisk SSDs continue to report widespread data loss issues with the SanDisk SSDs even after installing the firmware update, and included an example from his own colleague:

> My colleague Vjeran just lost 3TB of video we'd shot for The Verge because the drive is no longer readable



> This isn't a drive he purchased many months or years ago—it's the supposedly safe replacement that Western Digital recently sent after his original wiped his data all by itself. SanDisk issued a firmware fix for a variety of drives in late May,

1    shortly after our story. They sent out Vjeran's replacement in early June. He'd
just begun to trust it with work files again.[9]

2    35.    And *Ars Technica* reported that users have reported similar experiences on

3    Reddit, even after installing the firmware updated. For example, *Ars Technica* published the post

4    of user Natural-Opposite-633 on Reddit posted on July 26 that they updated their 4TB Extreme

5    SSD's firmware:

6        ... about a week after that, I was transferring some files from my Android device
to it, and it did the same thing, unmounted and would no longer mount unless you
7        formatted it. The data could be recovered with Diskdrill, but with generic
serialized names. ... I have 4 of these drives in total, one 4TB and one 2TB that
8        are not flagged as being affected and have been pretty solid. One new 4TB that
was flagged as being affected and [had] data loss twice as described above, and
9        one new 4TB I got through an Amazon sale that I'm regretting buying.[10]

10    36.    Thus, despite Defendants' claims that the firmware update fixed the defective

11    SanDisk SSDs, consumers continue to report drive failures and data loss with the SanDisk

12    Extreme and SanDisk Extreme PRO SSDs.

13    37.    This example underscores one of the fundamental problems with SanDisk's

14    response to its defective products.

15    38.    SanDisk's online store is supposed to support refunds within 30 days. The drives

16    have a five-year limited warranty, which states customers can "return the Product after first

17    obtaining a Return Material Authorization number and following any other guidelines listed. For

18    further information see shop.westerndigital.com/sandisk and select 'support.'"

19    39.    It also says SanDisk can "repair or replace the Product with a new reconditioned

20    or refurbished Product of equal or greater capacity, or another equivalent product" or "refund the

21    current market value" if SanDisk can't repair or replace it.

22    40.    However, a new or repaired drive doesn't address the loss of data—from a

23    product whose sole purpose was to store data.

24

25    [9] Sean Hollister, *We just lost 3TB of data on a SanDisk Extreme SSD*, The Verge (Aug. 7, 2023),
https://www.theverge.com/22291828/sandisk-extreme-pro-portable-my-passport-failure-
26    continued.

27    [10] Scharon Harding, *SanDisk's silence deafens as high-profile users say Extreme SSDs still
broken*, Ars Technica (Aug. 10, 2023), https://arstechnica.com/gadgets/2023/08/sandisk-
28    extreme-ssds-are-still-wiping-data-after-firmware-fix-users-say/.

41.     The purpose of the SanDisk SSDs, as advertised and intended by Defendants, was to safely, securely, and reliably store digital data.

42.     The information described above, including the now-known issues with the defective SanDisk SSDs and significant risk of permanent data loss, has rendered the SanDisk SSDs worthless to individuals seeking reliable data storage.

43.     As a result of the above, Plaintiffs and the Class have suffered damages in the form of permanent loss of digital data and will have to undertake considerable expense to replace the defective SanDisk SSDs with non-defective SSDs capable of performing the functions Defendants promised the SanDisk SSDs would perform.

## IV.   DEFENDANTS HAVE CONTINUED SELLING DEFECTIVE SANDISK SSDS WHILE DOWNPLAYING THE DEFECT

44.     Rather than pull the defective SanDisk SSDs from the shelves via recall, Defendants have instead continued selling the defective SanDisk SSDs.

45.     When reports of the defect first started surfacing, but before national media coverage, Defendants steeply discounted the defective SanDisk SSDs in what appeared to be an effort offload defective products on a then-uninformed consumer base. For example, the following screenshot from SanDisk's Amazon store shows that SanDisk was offering a 67% discount on SanDisk SSDs in May 2023:

//

//

//



46.     And today, despite the information and events described above, Defendants are still selling defective SanDisk SSDs at significant discounts:

47.     Defendants are thus flooding the market with defective devices while simultaneously failing to fix the defective devices already in customers' hands. These actions are exacerbating the harm to the general public as they are causing additional consumers to purchase virtually worthless devices which are incapable of performing their core intended function.

1

## CLASS ACTION ALLEGATIONS

2      48.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil

3  Procedure on behalf of themselves and as representatives of the following Class:

4          All persons in the United States who purchased SanDisk SSDs since 2020[11] ("the
           Class").
5

6      49.    Plaintiffs reserve the right to modify, expand or amend the above Class definition

7  or to seek certification of a class or classes defined differently than above before any court

8  determines whether certification is appropriate following discovery.

9

## FLORIDA SUBCLASS

10     50.    Plaintiffs bring this action individually and on behalf of the following Florida

11 Subclass pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4) on

12 behalf of the following Florida Subclass:

13         All persons residing in the State of Florida who purchased SanDisk SSDs since
           2020 (the "Florida Subclass").
14

15     51.    Plaintiffs reserve the right to modify, expand, or amend the above Florida

16 Subclass definition or to seek certification of a class or classes defined differently than above

17 before any court determines whether certification is appropriate following discovery.

18     52.    **Ascertainability**. The proposed Class and Subclass are readily ascertainable

19 because they are defined using objective criteria so as to allow class members to determine if

20 they are part of a Class or Subclass. Further, the Class and Subclass can be readily identified

21 through records maintained by Defendants.

22     53.    **Numerosity (Rule 23(a)(1))**. The Class and Subclass are so numerous that

23 joinder of individual members herein is impracticable. The exact number of Class or Subclass

24 members, as herein identified and described, is not known, but Defendants have sold at least

25 thousands of defective SanDisk SSDs.

26

27 [11] Plaintiffs have defined the Class and Subclass based on currently available information and
   hereby reserve the right to amend the definition of the Class and/or Subclass, including, without
28 limitation, membership criteria and the Class Period.

54. **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a. whether the SanDisk SSDs had a material defect;

b. whether Defendants knew, or should have known, that the SanDisk SSDs had a defect;

c. whether Defendants had a duty to disclose, and wrongfully failed to disclose, that the SanDisk SSDs had a defect;

d. whether Defendants misrepresented material facts and/or failed to disclose materials facts in connection with the manufacturing, packaging, labeling, marketing, distribution, and sale of the SanDisk SSDs;

e. whether Defendants' representations and omissions on the labeling of the SanDisk SSDs are likely to mislead, deceive, confuse or confound consumers acting reasonably;

f. whether Defendants represents to consumers that the SanDisk SSDs have characteristics, benefits, or qualities that they do not have;

g. whether Defendants had knowledge that its representations and/or omissions were false, deceptive, and/or misleading;

h. whether Defendants continues to make representations and/or omissions despite knowledge that the representations and/or omissions are false, deceptive, and/or misleading;

i. whether Defendants breached its express warranties;

j. whether Defendants breached its implied warranties;

k. whether Defendants engaged in fraudulent, deceptive, misleading, unlawful, and/or unfair trade practices;

l. whether Defendants engaged in false advertising;

m. whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

n.      whether Plaintiffs and the members of the Class and Subclass are entitled to actual, statutory, and punitive damages;

o.      whether Defendants unjustly retained a benefit such that restitution is appropriate; and

p.      whether Plaintiffs and members of the Class and Subclass are entitled to declaratory and injunctive relief.

55.     **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the proposed Class and Subclass. Plaintiffs and the Class and Subclass (as applicable) suffered injuries because of Defendants' wrongful conduct that is uniform across the Class and Subclass.

56.     **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to represent and protect the interests of the Class and Subclass fairly and adequately. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclass, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclass, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclass.

57.     **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclass is impracticable. The prosecution of separate actions by individual members of the Class and Subclass would impose heavy burdens upon the courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class and Subclass, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision

by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

58.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class and Subclass, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

59.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class and Subclass, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclass as a whole.

60.     In the alternative, the common questions of fact and law, *supra*, are appropriate for issue certification on behalf of the proposed Class and Subclass under Fed. R. Civ. P. 23(c)(4).

61.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### CLAIM 1

### BREACH OF EXPRESS WARRANTY

62.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants for breach of express warranty.

64.     Defendants manufactured, distributed, packaged, labeled, marketed, and sold the SanDisk SSDs into the stream of commerce with the intent that the SanDisk SSDs would be purchased by Plaintiffs and the Class and Subclass.

65.     Defendants expressly warranted, advertised, and represented to Plaintiffs and the Class and Subclass that the SanDisk SSDs were effective at storing Plaintiffs' and Class Members' and Subclass Members' data.

Defendants made these express warranties regarding the SanDisk SSDs' quality and fitness for use in writing through its website, advertisements, and marketing materials and on the SanDisk SSDs' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class and Subclass entered into upon purchasing the SanDisk SSDs. These affirmations of fact and/or promises became part of the basis of the bargain, and the contract, that Plaintiffs and the Class and Subclass entered into with Defendants upon purchasing the SanDisk SSDs. Defendants' advertisements, warranties, and representations were made in connection with the sale of the SanDisk SSDs to Plaintiffs, the Class, and the Subclass. Plaintiffs, the Class, and Subclass relied on Defendants' advertisements, warranties, and representations regarding the SanDisk SSDs in deciding whether to purchase Defendants' products.

66.     Defendants' products do not conform to Defendants' affirmations of fact and promises in that they are not effective at storing data.

67.     Defendants therefore breached their express warranties by placing products into the stream of commerce and selling them to consumers, when their use had negative effects, and were unusable for its stated purpose, rendering these products unfit for their intended use and purpose, and unsuitable for consumer use as marketed by Defendants. These associated defects substantially impair the use, value, and safety of the SanDisk SSDs.

68.     Defendants were aware, or should have been aware, of the presence of the defects in the SanDisk SSDs and therefore were aware or should have been aware of effects of the use of the SanDisk SSDs on consumers, but nowhere on the package labeling on Defendants' websites, or other marketing materials did Defendants warn Plaintiffs and members of the Class and Subclass of the potential for loss of data from the SanDisk SSDs.

69.     Instead, Defendants concealed the defect in the SanDisk SSDs and deceptively represented that the SanDisk SSDs were safe, of a certain quality, fast, rugged, were effective at storing data, and appropriate for use. Defendants thus utterly failed to ensure that the material representations it was making to consumers were true.

70.     The defects were present in the SanDisk SSDs when they left Defendants' possession or control and were sold to Plaintiffs, members of the Class and Subclass. The

dangers associated with use of the SanDisk SSDs were undiscoverable by Plaintiffs, members of the Class and Subclass at the time of purchase of the SanDisk SSDs.

71.    Defendants are the manufacturer, marketer, advertiser, distributor, labeler, and seller of the SanDisk SSDs and thus had exclusive knowledge and notice of the fact that the SanDisk SSDs did not conform to the affirmations of fact and promises.

72.    In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations to induce Plaintiffs and members of the Class and Subclass to rely on such representations.

73.    Defendants' affirmations of fact and promises were material, and Plaintiffs and members of the Class and Subclass reasonably relied upon such representations in purchasing the SanDisk SSDs.

74.    All conditions precedent to Defendants' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclass.

75.    Affording Defendants an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendants had ample opportunity to test their products for defects and to modify their manufacturing processes to ensure the defect was not present in the SanDisk SSDs to make them effective for use by Plaintiffs and members of the Class and Subclass.

76.    As a direct and proximate result of Defendants' breaches of express warranty, Plaintiffs and members of the Class and Subclass have been damaged because they did not receive the products as specifically warranted by Defendants. Plaintiffs and members of the Class and Subclass did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their payment and/or overpayment for the SanDisk SSDs.

77.    Plaintiffs and the Class and Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

1

## CLAIM 2

2

### BREACH OF IMPLIED WARRANTY

3      78.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

4      79.     Plaintiffs bring this claim individually and on behalf of the members of the

5    proposed Class and Subclass against Defendants for breach of implied warranty of

6    merchantability.

7      80.     Defendants are a merchant, manufacturer, marketer, warrantor, and seller of

8    goods—the SanDisk SSDs—to Plaintiffs and the Class and Subclass and knew or had reason to

9    know of the specific use for which the SanDisk SSDs were purchased.

10     81.     Plaintiffs and the proposed Class and Subclass are consumers who purchased the

11   SanDisk SSDs manufactured, sold, and marketed by Defendants throughout the United States.

12     82.     An implied warranty that the SanDisk SSDs were merchantable arose by

13   operation of law as part of the sale of the SanDisk SSDs.

14     83.     At all times mentioned herein, Defendants manufactured, distributed, or supplied

15   the products, and prior to the time the SanDisk SSDs were purchased by Plaintiffs and members

16   of the Class and Subclass, Defendants impliedly warranted to them that the SanDisk SSDs were

17   of merchantable quality, fit for their ordinary and intended use, and conformed to the promises

18   and affirmations of fact made on the SanDisk SSDs labels and packaging, including that the

19   SanDisk SSDs were effective at storing data. Plaintiffs and the Class and Subclass relied on

20   Defendants' promises and affirmations of fact when they purchased the SanDisk SSDs.

21     84.     Defects existed in the SanDisk SSDs when the SanDisk SSDs left Defendants'

22   possession or control and were sold to Plaintiffs and members of the proposed Class and

23   Subclass. The presence of defects in the SanDisk SSDs was undiscoverable by Plaintiffs and

24   members of the proposed Class and Subclass at the time of their purchases.

25     85.     Contrary to these representations and warranties, the SanDisk SSDs were not

26   merchantable or reasonably fit for either the use they were intended or the uses reasonably

27   foreseeable by Defendants and did not conform to Defendants' affirmations of fact and promises

28

as use of the SanDisk SSDs was accompanied by the risk of failure or data loss, which does not conform to the packaging.

86.     Defendants breached its implied warranties by selling products that failed to conform to the promises or affirmations of fact made on the packaging or label. Defendants had, and have, exclusive knowledge of the material facts concerning the defective nature of the SanDisk SSDs.

87.     Defendants were, or should have been, on notice of this breach, as they were on notice that the process used to manufacture the SanDisk SSDs was likely to result in the presence of defects in the SanDisk SSDs.

88.     Furthermore, Plaintiffs and members of the proposed Class and Subclass were at all material times the intended third-party beneficiaries of Defendants and their agents in the distribution of the sale of their products. Defendants exercise substantial control over the outlets that sell the SanDisk SSDs, which are the same means by which Plaintiff and members of the proposed Class and Subclass purchased the SanDisk SSDs. Defendants' warranties are not intended to apply to distributors but are instead intended to apply to consumers, including Plaintiffs and the proposed Class and Subclass, to whom Defendants directly markets through labels and product packaging, and who review the labels and product packaging in connection with their purchases. As a result, the warranties are designed and intended to benefit the consumers, including Plaintiffs and the proposed Class and Subclass, who purchase the SanDisk SSDs. Privity therefore exists based on the foregoing and because Defendants impliedly warranted to Plaintiffs and the proposed Class and Subclass through the packaging that the SanDisk SSDs were safe and suitable for their intended use.

89.     As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclass have suffered actual damages in that each of the SanDisk SSDs they purchased is worth less than the price they paid and/or that they would not have purchased at all if they had known of the attendant loss of data and defects associated with the use of each of the SanDisk SSDs.

90.     Plaintiffs, the Class, and the Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## CLAIM 3

### FRAUDULENT MISREPRESENTATION

91.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

92.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants for fraudulent misrepresentation.

93.     Defendants falsely represented to Plaintiffs, the Class, and the Subclass that the SanDisk SSDs were of a certain quality, fast, rugged, reliable, and fit for their intended use. The SanDisk SSDs , however, contained defects, which had a significant risk of causing the loss of data, which does not conform to the packaging. Therefore, Defendants have made misrepresentations about the SanDisk SSDs.

94.     Defendants' misrepresentations regarding the SanDisk SSDs are material to a reasonable consumer because they relate to the quality, speed, and reliability of the SanDisk SSDs. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the SanDisk SSDs.

95.     Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs, the Class, and the Subclass to purchase the SanDisk SSDs.

96.     Defendants knew that its representations about the SanDisk SSDs were false, or that there was a significant likelihood that they were false, in that the SanDisk SSDs either did or likely did contain defects which does not conform to the SanDisk SSDs' labels, packaging, advertising, and statements. Defendants knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs, the Class, and the Subclass.

97.     Plaintiffs, the Class, and the Subclass did in fact rely on these misrepresentations and purchased Products to their detriment. Given the deceptive way Defendants advertised, represented, and otherwise promoted the SanDisk SSDs, the reliance Plaintiffs, the Class, and the Subclass placed on Defendants' misrepresentations was justifiable.

98.     As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclass have suffered actual damages in that they purchased the SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known of the risk of the presence of defects in the SanDisk SSDs and the risks associated with the use of the SanDisk SSDs that does not conform with the SanDisk SSDs' labels, packaging, advertising, and statements.

99.     Plaintiffs, the Class, and the Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

<b><u>CLAIM 4</u></b>

<b>FRAUD BY OMISSION</b>

100.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

101.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants for fraud by omission.

102.    Defendants actively and knowingly concealed from and failed to disclose to Plaintiffs, the Class, and the Subclass that use of the SanDisk SSDs is accompanied by a risk of data loss which does not conform to the SanDisk SSDs' labels, packaging, advertising, and statements.

103.    Defendants were under a duty to disclose to Plaintiffs, the Class, and the Subclass the true safety, quality, characteristics, fitness for use, and suitability of the SanDisk SSDs because: (1) Defendants were in a superior position to know the true state of facts about its products; (2) Defendants were in a superior position to know the risks associated with the use of, characteristics of, and suitability of the SanDisk SSDs for use by individuals; (3) Defendants knew that Plaintiffs, the Class, and the Subclass could not reasonably have been expected to

learn or discover that the SanDisk SSDs were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the SanDisk SSDs; (4) Defendants' packaging and labels disclosed misleading information to consumers by omitting that the SanDisk SSDs contain defects; and (5) based on Defendants' partial statements on the SanDisk SSDs' labels and packaging that gave a misleading impression to reasonable consumers that the SanDisk SSDs are suitable for use, without further information on the presence defects had not been disclosed, Defendants assumed the obligation to make a full and fair disclosure of the whole truth.

104.    Defendants know their customers trust the quality of their products and that they expect the SanDisk SSDs to be suitable for use and to not have risk of data loss.

105.    Due to the omissions on the SanDisk SSDs' packaging, Defendants had a duty to disclose the whole truth about the presence, and material risk, in the SanDisk SSDs to Plaintiffs and the proposed Class and Subclass. Defendants failed to discharge its duty to disclose the presence of defects in the SanDisk SSDs.

106.    The facts concealed or not disclosed by Defendants to Plaintiffs, the Class, and the Subclass were material in that a reasonable consumer would have considered them important when deciding whether to purchase the SanDisk SSDs.

107.    Plaintiffs, the Class, and the Subclass justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and defects of the SanDisk SSDs, which is inferior when compared to how the SanDisk SSDs are advertised and represented by Defendants.

108.    As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclass have suffered actual damages in that they purchased the SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known of  defects of the SanDisk SSDs which do not conform to the SanDisk SSDs' labels, packaging, advertising, and statements.

109.    Plaintiffs, the Class, and the Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## CLAIM 5

### NEGLIGENT MISREPRESENTATION

110.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

111.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants for negligent misrepresentation.

112.    Because Defendants have superior knowledge regarding the quality of their products and because Plaintiffs and members of the proposed Class and Subclass trust and rely on Defendants to provide accurate and truthful information regarding the SanDisk SSDs, which Plaintiffs and members of the proposed Class and Subclass cannot ascertain on their own, Defendants had a duty to Plaintiffs, the Class, and the Subclass to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of the SanDisk SSDs.

113.    Defendants breached their duty to Plaintiffs, the Class, and the Subclass by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs, the Class, and the Subclass that did not have the, qualities, characteristics, and suitability for use as advertised by Defendants.

114.    Defendants packaged, labeled, marketed, and advertised the SanDisk SSDs in a manner indicating that the SanDisk SSDs were and are, among other things, suitable for use. However, the SanDisk SSDs contained, or were at risk of containing, defects, which does not conform to the packaging. Therefore, Defendants have made misrepresentations about the SanDisk SSDs.

115.    Defendants' misrepresentations regarding the SanDisk SSDs are material to a reasonable consumer because they relate to the quality of the SanDisk SSDs, which the consumer is receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in deciding whether or not to purchase the SanDisk SSDs.

116.    At all relevant times when such misrepresentations were made, Defendants knew or had been negligent in not knowing that the SanDisk SSDs contained, or were at risk of

containing, defects which caused the loss of consumers' data. Defendants have no reasonable grounds for believing its misrepresentations were not false and misleading.

117.    Defendants knew or should have known that the qualities and characteristics of the SanDisk SSDs were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Defendants yet continued selling the SanDisk SSDs. Specifically, Defendants knew or should have known that: (1) the manufacturing process used to produce the SanDisk SSDs resulted in the presence of defects in the SanDisk SSDs or a substantial risk that defects would be found in the SanDisk SSDs, and (2) the SanDisk SSDs were otherwise not as warranted and represented by Defendants.

118.    Defendants intended that Plaintiffs and members of the proposed Class and Subclass would rely on these representations, as evidenced by the intentional and conspicuous placement of the misleading representations on the SanDisk SSDs' packaging by Defendants, as well as its advertising, marketing, and labeling of the SanDisk SSDs as, among other things, suitable for use.

119.    Plaintiffs and members of the proposed Class and Subclass have reasonably and justifiably relied on Defendants' negligent misrepresentations when purchasing the SanDisk SSDs, and had the correct facts been known, would not have purchased the SanDisk SSDs at all, or would have paid less for them.

120.    As a direct and proximate result of Defendants' conduct, Plaintiffs, the Class, and the Subclass have suffered actual damages in that they purchased the SanDisk SSDs that were worth less than the price they paid and/or that they would not have purchased at all had they known they contained, or had a material risk of containing, defects that caused substantial loss of personal data, which does not conform to the products' labels, packaging, advertising, and statements.

121.    Plaintiffs, the Class, and the Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**CLAIM 6**

**UNJUST ENRICHMENT**

122.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

123.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants for unjust enrichment.

124.    Plaintiffs, the Class, and the Subclass conferred substantial benefits on Defendants through their purchase and use of the SanDisk SSDs. Defendants knowingly and willingly accepted and enjoyed these benefits. Defendants either knew or should have known that the payments rendered by Plaintiffs, the Class, and the Subclass were given with the expectation that the SanDisk SSDs would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances when Plaintiffs and the proposed Class and Subclass did not receive the benefit of the SanDisk SSDs for which they bargained.

125.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs, the Class, and the Subclass because Defendants' labeling of the SanDisk SSDs was misleading to consumers, which caused injuries to Plaintiffs and the proposed Class and Subclass because they would not have purchased the SanDisk SSDs or would have paid less for the SanDisk SSDs had they known that they contained, or had a material risk of containing defects which caused the substantial loss of personal data.

126.    As a direct and proximate result, Plaintiffs, the Class, and the Subclass are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

127.    Plaintiffs and the proposed Class and Subclass seek restitution, disgorgement, imposition of a constructive trust, and/or other appropriate injunctive and declaratory relief, and any other just and proper relief available under the laws.

**CLAIM 7**

**CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**
**Cal. Civ. Code §1750, *et seq*.**
**(On behalf of Plaintiffs Perrin and Bayerl, and the Class)**

128.    Plaintiffs Perrin and Bayerl incorporate the forgoing allegations as if fully set forth herein.

129.    Defendants conduct with respect to the SanDisk SSDs took place in substantial part within California.

130.    Plaintiffs Perrin and Bayerl have provided Defendants notice of the specific complaint in accordance with Cal. Civ. Code §1761.

131.    Plaintiffs Perrin and Bayerl have also filed an affidavit in accordance with Cal. Civ. Code §1780 concurrently with this Complaint.

132.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass are "consumer[s]" as that term is defined in Cal. Civ. Code §1761(d).

133.    The SanDisk SSDs are "goods," as that term is defined in Cal. Civ. Code §1761(a).

134.    Each Defendant is a "person" as that term is defined in Cal. Civ. Code §1761(c).

135.    Each purchase of the SanDisk SSDs by Plaintiffs Perrin and Bayerl, and members of the Class and Subclass constituted a "transaction" as that term is defined in Cal. Civ. Code §1761(e).

136.    Defendants' conduct alleged herein violates the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

    a.    Cal. Civ. Code §1770(a)(5), by negligently, recklessly, and/or intentionally representing that the SanDisk SSDs were effective when in fact they contain, or have a material risk of defects which could cause a Product user to lose their data;

    b.    Cal. Civ. Code §1770(a)(7), by negligently, recklessly, and/or intentionally representing that SanDisk SSDs were of a particular standard, quality, or grade, when they were of another;

    c.    Cal. Civ. Code §1770(a)(9), by negligently, recklessly, and/or intentionally advertising the SanDisk SSDs with intent not to sell them as advertised; and

    d.    Cal. Civ. Code §1770(a)(16), by representing that the SanDisk SSDs have been supplied in accordance with previous representations when they have not.

137.    Defendants were obligated to disclose the presence of, and material risk of, defects in the SanDisk SSDs because: (a) Defendants had exclusive knowledge of the presence of defects in the SanDisk SSDs that were not known or reasonably accessible to Plaintiffs Perrin and Bayerl and members of the Class and Subclass; (b) Defendants actively concealed the presence of defects in the SanDisk SSDs from Plaintiffs Perrin and Bayerl, and members of the Class and Subclass; and (c) Defendants made partial statements on the SanDisk SSDs labels and packaging that gave the misleading impression to reasonable consumers, including Plaintiffs Perrin and Bayerl, and members of the Class and Subclass, without further information on the presence of defects that had not been disclosed.

138.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass relied on Defendants' representations when purchasing the SanDisk SSDs.

139.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass were deceived by Defendants' deceptive, fraudulent, and unconscionable acts and practices in that had they known the truth they would not have purchased the SanDisk SSDs or would have paid less for the SanDisk SSDs.

140.    As a direct and proximate result of these violations, Plaintiffs Perrin and Bayerl, and members of the Class and Subclass have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the SanDisk SSDs.

141.    Defendants' deceptive trade practices caused injury in fact to Plaintiffs Perrin and Bayerl, and members of the Class and Subclass in the form of the loss or diminishment of value of the SanDisk SSDs Plaintiffs and members of the Class and Subclass purchased, which allowed Defendants to profit at the expense of Plaintiffs and members of the Class and Subclass.

142.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiffs and members of the Class and Subclass, such that prospective injunctive relief is necessary.

### CLAIM 8

**CALIFORNIA'S FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code §17500,** *et seq.*
**(On behalf of Plaintiffs Perrin and Bayerl, and members of the Class and Subclass)**

143.    Plaintiffs Perrin and Bayerl incorporate the foregoing allegations as if fully set forth herein.

144.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass purchased the SanDisk SSDs through connections stemmed in substantial part from California. California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

145.    Defendants' untrue and misleading statements significantly impacted the public because Defendants sells the SanDisk SSDs nationwide, including in California, and there are millions of consumers of the SanDisk SSDs, including Plaintiffs Perrin and Bayerl, and members of the Class and Subclass.

146.    As set forth herein, Defendants' claims that the SanDisk SSDs were and are of a certain quality and fit for their intended use by individuals were false because the SanDisk SSDs in fact contain, or have a material risk of containing, defects, which could cause a user to suffer substantial loss of personal data from use of the SanDisk SSDs and were likely to deceive the public.

147.    Defendants' claims that the SanDisk SSDs were and are fit for use by individuals were and are untrue and misleading because they failed to mention the presence of defects, which could cause a product user to suffer adverse substantial loss of personal data from use of the SanDisk SSDs.

148.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase the SanDisk SSDs without being aware that the SanDisk SSDs contained or had a material risk of containing defects.

149.    Defendants knew, or reasonably should have known, that all these claims were untrue or misleading and likely to deceive the public.

150.    As a direct and proximate result of Defendants' false advertising, Plaintiffs Perrin and Bayerl, and members of the Class and Subclass have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the SanDisk SSDs.

151.    As a direct and proximate result of Defendants' false advertising, Plaintiffs Perrin and Bayerl, and members of the Class and Subclass suffered damages by purchasing the SanDisk SSDs because they received a product that was worthless, and/or worth less, because it contains, or has a material risk of containing, defects, and they would not have purchased or would have paid less for the SanDisk SSDs had they known this fact.

152.    Defendants' false advertising caused injury in fact and actual damages to Plaintiffs and the members of the Class and Subclass in the form of the loss or diminishment of value of the SanDisk SSDs Plaintiffs and the members of the Class and Subclass purchased, which allowed Defendants to profit at the expense of Plaintiffs and the members of the Class and Subclass.

153.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiffs Perrin and Bayerl, and members of the Class and Subclass, such that prospective injunctive relief is necessary. Plaintiffs Perrin and Bayerl, and members of the Class and Subclass are entitled to injunctive and equitable relief and restitution in the amount they spent on the SanDisk SSDs, as well as any other just and proper relief, pursuant to Cal. Bus. & Prof. Code §17535 and applicable law.

# CLAIM 9

### CALIFORNIA'S UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §17200, *et seq.*
### (On behalf of Plaintiffs Perrin and Bayerl, and members of the Class and Subclass)

154.    Plaintiffs Perrin and Bayerl incorporate the foregoing allegations as if fully set forth herein.

155.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass purchased the SanDisk SSDs through connections which stemmed in substantial part from California.

156.    The California Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

157.    For the reasons discussed herein, Defendants violated and continues to violate California's Unfair Competition Law by engaging in the herein described fraudulent, deceptive, unfair acts or practices proscribed by Cal. Bus. & Prof. Code §17200, *et seq*. Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

158.    Defendants fraudulently represented that the SanDisk SSDs were and are fit for use by individuals when in fact they contain, or have a material risk of containing, defects, which could cause a SanDisk SSDs user to lose substantial personal data from use of the SanDisk SSDs.

159.    As alleged herein, Defendants unlawfully advertised the SanDisk SSDs using false or misleading claims, such that Defendants' actions as alleged herein violate at least the following laws:

    a.    California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*;

    b.    California False Advertising Law, Cal. Bus. & Prof. Code §§17500, *et seq.*

160.    Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the SanDisk SSDs is also unfair because it violates public policy as

1    declared by specific constitutional, statutory, or regulatory provisions, including, but not limited

2    to, the California Consumers Legal Remedies Act and the California False Advertising Law.

3        161.    Defendants' conduct with respect to the labeling, packaging, advertising,

4    marketing, and sale of the SanDisk SSDs is also unfair because the consumer injury is

5    substantial, not outweighed by benefits to consumers or competition, and not one that consumers,

6    themselves, can reasonably avoid.

7        162.    As a direct and proximate result of Defendants' false advertising, Plaintiffs Perrin

8    and Bayerl, and members of the Class and Subclass have been harmed, and that harm will

9    continue unless Defendants are enjoined from using the misleading marketing described herein

10   in any manner in connection with the advertising and sale of the SanDisk SSDs.

11       163.    As a direct and proximate result of Defendants' fraudulent, unfair, and unlawful

12   practices, Plaintiffs Perrin and Bayerl, and members of the Class and Subclass suffered damages

13   by purchasing the SanDisk SSDs because they received a product that was worthless, and/or

14   worth less, because it contains, or has a material risk of containing, defects, and they would not

15   have purchased or would have paid less for the SanDisk SSDs had they known this fact.

16       164.    Defendants' fraudulent, unfair, and unlawful practices caused injury in fact and

17   actual damages to Plaintiffs Perrin and Bayerl, and members of the Class and Subclass in the

18   form of the loss or diminishment of value of the SanDisk SSDs Plaintiffs Perrin and Bayerl, and

19   members of the Class and Subclass purchased, which allowed Defendants to profit at the expense

20   of Plaintiffs Perrin and Bayerl, and members of the Class and Subclass.

21       165.    In accordance with Cal. Bus. & Prof. Code §17203, Plaintiffs Perrin and Bayerl,

22   and members of the Class and Subclass seek an order enjoining Defendants from continuing to

23   conduct business through fraudulent, unfair, or unlawful acts and practices. Defendants'

24   misconduct is continuing, with no indication of Defendants' intent to cease this fraudulent,

25   unlawful, and unfair course of conduct, posing a threat of future harm to Plaintiffs Perrin and

26   Bayerl, and members of the Class and Subclass, such that prospective injunctive relief is

27   necessary.

28

166.    Plaintiffs Perrin and Bayerl, and members of the Class and Subclass also seek an order for the restitution of all monies from the sale of the SanDisk SSDs, which were unjustly acquired through acts of fraudulent, unfair, or unlawful acts and practices, as well as any other just and proper relief, pursuant to Cal. Bus. & Prof. Code §17203 and applicable law.

**CLAIM 10**

**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §501.201,** *et seq.*
**(On behalf of Plaintiffs Perrin, Bayerl and the Florida Subclass**)

167.    Plaintiffs Perrin and Bayerl incorporate the foregoing allegations as if fully set forth herein.

168.    Plaintiffs Perrin, Bayerl, and members of the Florida Subclass are or were residents of Florida and/or made purchases of SanDisk SSDs in Florida.

169.    Plaintiffs Perrin, Bayerl, and members of the Florida Subclass are "consumers," as defined by Fla. Stat. §501.203(7), and the products sold by Defendants are "goods" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

170.    FDUTPA, Fla. Stat. §501.204, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

171.    For the reasons discussed herein, Defendants violated and continue to violate FDUPTA by engaging in the herein described unconscionable, deceptive, and unfair acts or practices proscribed by Fla. Stat. §501.201, *et seq*. Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

172.    At all times mentioned herein, Defendants engaged in trade or commerce in Florida, as defined by Fla. Stat. §501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

173.    Defendants repeatedly advertised on the labels for SanDisk SSDs, on their websites, and through national advertising campaigns, among other items, that SanDisk SSDs would have the qualities, characteristics, and suitability for use. Defendants failed to disclose the material information that SanDisk SSDs contained or materially risked containing defects which cause substantial loss of personal data.

174.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase SanDisk SSDs without being aware the SanDisk SSDs contained or materially risked containing these defects. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiffs Perrin, Bayerl and members of the Florida Subclass suffered damages by purchasing SanDisk SSDs because they would not have purchased SanDisk SSDs had they known the truth, and they received a product that was worthless and/or worth less, because it contained or materially risks containing defects which cause substantial loss of personal data.

175.    Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiffs Perrin, Bayerl, and members of the Florida Subclass in the form of the loss of diminishment of value of the SanDisk SSDs Plaintiffs Perrin, Bayerl, and members of the Florida Subclass purchased, which allowed Defendants to profit at the expense of Plaintiff Perrin, Bayerl, and members of the Florida Subclass. The injuries to Plaintiff Perrin, Bayerl, and members of the Florida Subclass were  legally protected interests. The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

176.    Defendants' unlawful conduct is continuing, with no indication of Defendants' intent to cease this fraudulent course of conduct, posing a threat of future harm to Plaintiffs Perrin, Bayerl, and members of the Florida Subclass, such that prospective injunctive relief is necessary.

177.    Plaintiffs Perrin, Bayerl, and members of the Florida Subclass seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, including but not limited to, actual damages, restitution, penalties, injunctive and declaratory

relief, attorneys' fees and/or costs, as well as any other just and proper relief, as provided by Fla. Stat. §501.211 and applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as to each count, including:

A.      An order certifying this action as a class action, certifying the Class and Subclass requested herein, designating Plaintiffs as the representatives of the Class and Subclass, appointing Plaintiffs' counsel as counsel to the Class and Subclass, and requiring Defendants to bear the costs of a class action;

B.      An order declaring that Defendants' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; (v) negligent misrepresentation; (vi) unjust enrichment; and (vii) unfair and deceptive business practices in violation of the identified state law consumer protection statutes, and that Defendants are liable to Plaintiffs, members of the Class, and members of the Subclass, as described herein, for the relief arising therefrom;

C.      An order enjoining Defendants from selling the SanDisk SSDs until defects are eliminated or full disclosure of the presence of defects appears on all labels, packaging, and advertising, and requiring Defendants to remove any defects which cause, among other things, the substantial loss of personal data;

D.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.      A judgment awarding Plaintiffs and members of the Class and Subclass all appropriate economic, monetary, actual, statutory, and consequential damages, in an amount to be determined at trial;

F.      A judgment awarding Plaintiff and members of the Class and Subclass restitution and/or disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs

1    and members of the Class and Subclass as the result of its unlawful, unfair, and fraudulent

2    business practices described herein;

3          G.      A judgment awarding Plaintiffs and members of the Class and Subclass

4    prejudgment and post-judgment interest, as permitted by law;

5          H.      A judgment awarding Plaintiffs and members of the Class and Subclass punitive

6    damages, as allowed by law;

7          I.      A judgment awarding Plaintiffs and members of the Class and Subclass costs and

8    fees, including attorneys' fees, as permitted by law; and

9          J.      For such further relief that the Court may deem just and proper.

10                          **<u>DEMAND FOR JURY TRIAL</u>**

11          Plaintiffs demand a trial by jury for all issues so triable.

12    DATED: August 17, 2023                    Respectfully submitted,

13                                              **BERMAN TABACCO**

14
                                               By:   */s/ Todd A. Seaver*
15                                                     Todd A. Seaver

16                                              Matthew D. Pearson
17                                              425 California Street, Suite 2300
                                               San Francisco, CA  94104
18                                              Telephone: (415) 433-3200
                                               Facsimile: (415) 433-6382
19                                              Email: tseaver@bermantabacco.com
20                                                      mpearson@bermantabacco.com

21                                              Ian W. Sloss
                                               Johnathan Seredynski
22                                              Brett L. Burgs
                                               **SILVER GOLUB & TEITELL LLP**
23                                              One Landmark Square, Floor 15
24                                              Stamford, CT 06901
                                               Telephone: (203) 425-4491
25                                              Email: isloss@sgtlaw.com
                                                       jseredynski@sgtlaw.com
26                                                      bburgs@sgtlaw.com

27

28

1  Todd A. Seaver (SBN 271067)
   Matthew D. Pearson (SBN 235339)
2  **BERMAN TABACCO**
   425 California Street, Suite 2300
3  San Francisco, CA  94104
   Telephone: (415) 433-3200
4  Facsimile: (415) 433-6382
   Email: tseaver@bermantabacco.com
5         mpearson@bermantabacco.com

6  *Attorneys for Plaintiffs*

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10 MATTHEW PERRIN and BRIAN BAYERL,      )   No.
   individually and on behalf of all others )
11 similarly situated,                     )   **AFFIDAVIT IN SUPPORT OF**
                                           )   **VENUE PURSUANT TO**
12                            *Plaintiffs*, )   **CALIFORNIA CIVIL CODE**
                                           )   **SECTION 1780(d)**
13 v.                                      )
                                           )
14 SANDISK LLC; WESTERN DIGITAL            )
   CORPORATION; WESTERN DIGITAL           )
15 TECHNOLOGIES, INC.,                     )
                                           )
16                          *Defendants*.  )
                                           )

17

18                    **AFFIDAVIT OF TODD A. SEAVER**

19         I, Todd A. Seaver, state and declare as follows:

20         1.      I am an attorney duly admitted to practice law in the State of California. I make

21 this affidavit pursuant to California Civil Code Section 1780(d). The facts contained in this

22 affidavit are true and correct to the best of my knowledge, information, and belief.

23         2.      The complaint in this action is filed in the proper place for trial of this action

24 because Defendants' main offices are in Milpitas, California and San Jose, California, both in

25 Santa Clara County; Defendants conduct substantial business within Santa Clara County; and the

26 events, acts, and omissions that are subject to any claim in this matter occurred, in substantial

27 part, within Santa Clara County. Therefore, the appropriate venue for this matter is the U.S.

28 District Court for the Northern District of California, San Jose Division.

AFFIDAVIT IN SUPPORT OF VENUE PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1780(d)

1    I declare under penalty of perjury under the laws of the State of California that the

2 foregoing is true and correct to the best of my knowledge, information and belief.

3    Executed this 17th day of August, 2023, in San Francisco, California.

4

5

6                            /s/ Todd A. Seaver
                             Todd A. Seaver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28